Justice Act. The court certainly appreciates that. Glad to do it, Your Honor. Especially at my age, I actually have little experience doing this, so... May I please report? Mr. Tremel, Court's Clerk. As the Court knows, I'm from Cedar Rapids. It's a bit of a long trip over. Happy to make it, but I've spent a lot of time thinking about why I'm here. I didn't request oral argument. Mr. Tremel didn't. I think we both think we helped the Court enough on the briefs. That tells me that this Court has some questions about what it is we've written. The issues in this case are simple. Chief Judge Reed, in sentencing, gave Mr. Lynch a 5-level increase for distribution, denied him a 2-level decrease, and essentially imposed a 210-month sentence. For example, in this sentencing, she then imposed either—I'm not sure it's critical—an alternative sentence or a variance, and imposed the same 210-month sentence. I went into that sentencing pretty confident, because in cases like this, the forensic evidence usually is definitive and determinative. In this case, it wasn't. It showed that Mike Fyfe never once distributed an image to anyone, and that the only people that got images were the people that were investigating him in the undercover that apparently went on and apparently accessed either Ares or Shereza to get some images off this computer. What is the evidence here? We have a lot of child porn images, but there's some reference, and I didn't look it up, other than to read the references in the transcripts, about two prior occasions of your client involving minors, oral sex, and so forth. What is that? That's right, Your Honor. That is—if I could skip ahead—those are the reasons the court gave for imposing the alternative sentence. The court said, in her opinion, the offense in the age of the children was the reason, and we already in the brief have started taking into consideration the guidelines. The second reason was Mr. Lynch had sexual contact with two individuals more than 10 years ago. One was an individual he met when the child was 16, apparently had some contact with him after that child turned 18. The other occasion was, during his Mirandized interview, he admitted to having oral sex with either a 15- or a 16-year-old, couldn't recall the age, on two occasions, Your Honor. Counsel, to your first inquiry or statement regarding why we may have wanted to hear this case, this case seems to present the interesting fact scenario where this might be the case where a defendant used file-sharing software but lacked the computer sophistication to know that that made what he had on his computer available to others. Because we've had a number of cases in our circuit where the use of that kind of software, with the knowledge that others would have access to it, was sufficient to establish distribution. And here we've got this colloquy where it seems to come out that the defendant was relatively clueless in terms of computer sophistication. I think that's exactly the case, Your Honor. The case law talks about it, it's mentioned in the briefs, the burdens on us to come forward with the production of concrete evidence of ignorance, those are right off his recorded interview, those portions by the agent and the answers by my client. So if you're right on that, how would you be able to succeed, though, if the court gave an alternative sentence? Or gave a sentence based on alternative grounds? Well, Your Honor, I think it's really two reasons. If I may continue, the various reasons, the alternative sentence. And again, I mentioned the offense in age of the children. We already got clubbed with a lot of levels for that. And the third reason was the sadomasochistic images in the number. We got clubbed on that, too. We took a lot of levels in the pre-sentence report on that. And the only third one was that I just mentioned or discussed with this sexual contact with two or more individuals more than ten years ago. If I had to look at this court in the eye and say, why did my client end up with an alternative sentence that was identical, that added twice his penalty, is because Judge Reed read that information about the contact with those children and she wasn't going to let that slide. That's why I asked you that. Well, that's why I asked you about it and I just wondered if there is error here on the calculation, why it may be harmless due to her findings on that. But I don't think there's sufficient evidence. Before you answer that, is this the case where, is your client a teacher? Yes, Your Honor. So he works with kids? Right. And I don't remember the judge saying anything about that particularly. I think he had a couple of them. He worked at a state of Iowa agency, Toledo Home, that has children there. That's where he met the one child who was 16 and then hooked up later with a child who was 18. And then he also had a private tutoring business, driver instructor business as well. Okay, go ahead and answer the question. Well, Your Honor, why isn't it harmless there? It's not harmless for a couple reasons. I think it's, I don't think it's in the brief, but it's United States v. ICAZA. It's an 8th Circuit, 492, Fed 3rd, 967. The court specifically said when the court doesn't make an alternate calculation of what the guideline would have been and simply says in an effort to cover a possible guideline error, it can't be harmless error because it hasn't done that alternate calculation. Well, I don't think that here. I think this was a calculation based on 3553A. It wasn't a calculation of the guideline. It just said under 3553A, I would have given the same sentence anyway. It's unreasonable then, Judge. I mean, I don't think it, I think doubling someone's sentence in serious cases like this to begin with. And then steamboating through on a 7-level error. I just don't think that's harmless, Your Honor. We argued that, we made the argument that there's no correlation. Well, this is way above the statistics provided by the U.S. Department of Justice. Well, but see, you're back to the guidelines calculation. Tell me why I think it's 210 months is substantially unreasonable. Don't talk to me about the guidelines. I mean, because the alternative sentence has nothing to do with the guidelines. I say under 3553A factors, it's 210 months. So why is it substantively unreasonable? Well, Your Honor, I don't think it's accorded the presumption of reasonableness under the case law. And I think that if the core of the error, if the core of the criminal conduct here is downloading child porn, to then go and look to something that happened 10 years where there's scant facts to begin with, and more than essentially doubling the penalty, that strikes me as unreasonable, Your Honor. Okay. And, you know, there's, who knows what's reasonable and unreasonable? Of course, it's a very subjective determination. But doubling someone's score with no good reasons or reasons that you've already listed for the guideline range strikes me as unreasonable. Counsel, I thought the district judge was concerned with this issue of distribution, that his computer program was such that others could come in and pick it up. And that's one of the issues in this case. Yeah, he has software that has peer-to-peer capabilities. Yes. And so that's where she got that upward mobility, if that's the right word, in her sentence. One of the problems that I have with this case, and with the U.S. attorney I'm going to ask him, is that we had a case yesterday, United States v. Gutzman, in which Judge Jarvie had a similar case and similar sentence. And the evidence that supported this distribution business, beyond his knowledge of defragmentation or whatever it was that she mentioned, was much stronger, it seemed to me, than in this case. And Judge Jarvie did a variance downward so that we have here about an 80-month disparity between two defendants with similar records, which runs contra to one of the aspects of 3553A. And I don't know that in the Cedar Rapids, in the Northern District, is there any cross-pollination, so to speak, among the judges. So that's why we started out getting the guidelines, because there was this great disparity. And now, with the guidelines, this is a case in which Gutzman ought to have gotten the bigger sentence, but he gets the big break, and we have similar people with similar offenses, radically different. There's only Chief Judge Reed. What? And so all those cases are decided by Chief Judge Reed. And so there's not another judge I can point to and say, well, I'd have to go to Judge Jarvie down in Davenport, Iowa. It was actually Judge Gritzner. Or Judge Gritzner's a good example. Judge Gritzner's very down to 80 months. Another good example, but you'd have to look out of the district to see. I mean, this is a typical child penalty sentence in the Northern District of Iowa, Cedar Rapids Division. Thank you. Okay. May it please the court, Professor Lyon. My name is Mark Tremel. I'm an assistant U.S. attorney in Cedar Rapids, Iowa. Before you get too far, counsel, I want to take up with you this business. Does the U.S. Attorney's Office have a duty in the sentence ambience of the sentencing guidelines to attempt to keep similarly situated defendants getting similarly situated sentences? And if you do, if that's part of your duties under the federal law that the U.S. Attorney General supported, don't you have an obligation to point out to Judge Reed that we have another judge that has a similar case? Or surely your office knows this kind of stuff. This seems to be a kind of sticks in my craw a little bit. Well, Your Honor, we do have a duty, and we look at each case carefully, but we're well aware that some judges are more likely to impose a guideline sentence than other judges, and it's part of the reality in our district that you will get variances more. Did you make any argument in this case to Judge Reed? Will Judge Reed, in view of what Judge Jarvie has done in a similar case, that maybe you ought to take a look at it again, or does that just go by the way? Well, I was not aware of the specific case that was in the Southern District. United States v. Gutzman. Yes, yes. I was not aware of that, Your Honor, at the time of this sentencing. Judge Jarvie says, well, because the evidence of this transportability of this stuff is so thin, and it's a lot thicker in his case than in this one, I'm going to vary downward, and I believe, if my calculation is correct, there's an 80-month disparity between these two defendants. And I understand, Your Honor, part of having the advisory guidelines in post-Gaul is we're getting those disparities, and it's not something that we in our position can get rid of completely, obviously. There are some cases where we have cases where we offer a plea to a possession offense, and that possession offense will reduce the guideline level by four, if we think that's appropriate. And so we do take some steps to address that. But bottom line, yes, there are disparities. I did want to mention, Judge Smith, your concern about is this one of the cases where the defendant did not know how the software worked. We strongly believe that this is a case where there's significant indirect evidence that the defendant did distribute with the expectation of receipt of a thing of value. This is different from the Durham case. In the Durham case, Mr. Durham didn't even install the software, and there was limited evidence that he even knew how to operate it. In this case, now, granted, we have no direct evidence. Other cases, there's some cases with direct evidence where the defendant admitted that, yes, I know that other people can download from me. Go ahead and talk about it. When you're done, I want to talk to you about that. We don't have that direct evidence in this case, primarily because the defendant, a smart man, when confronted by law enforcement, they're seizing his computers. He knows they're going to fine child pornography, but when he's asked, did you know that other people were getting it off you, he denies it, and he denies it again and again. His mere denial of it doesn't mean he did not know. I think it's important as to where he, when he denies it and where he denied it. When he was first approached by the FBI, and before he was counseled of and was asked these questions, he said, I didn't know. It wasn't a pre-programmed arrangement. And that was one of the differences between Jarvie's case and this case. The other guy was lawyered up, and this guy, he just came in, he said, I didn't know. She then says, well, he knew he had defragmented his computer twice. I guess that was one of the reasons for the indirect finding of indirect evidence. In this case, you mean, Your Honor? Yes, this case. And then he, in examining then that he had this capability, and his brother, I guess, put this on his machine. So I'm not sure that your answer to Judge Smith is wholly answers the question. Well, Your Honor, if I may finish, the brother putting it on, that was the Durham case. That was the Durham case where the court found that there was concrete evidence of ignorance, that Durham didn't know how to use the software. What we're arguing is this case is much different from the Durham case. Here's what we have in this case. The defendant had files downloaded by law enforcement from his computers in January, February, March, and April of 2013. You can't tell that by looking at his computer. The only way that we can tell that is that law enforcement downloaded it. You can't tell by looking on the computer, according to the record. And these were all law enforcement downloads, right? Yeah, those are the only ones we know about, Judge, because you can't tell by looking at a computer how many times other people have downloaded out of your shared folder. The only reason we knew these were by law enforcement is because the same files were found  But the defendant had used two different peer-to-peer programs, Shareza and Aries. He'd used Aries since 2007 or 2008. He said he used Shareza a long time ago. He had three different shared folders called MySharedFolder, and the way he got child porn off other people was by typing in search terms like little boys, and then he would download the files off other people's computers. It would be amazing. It would be very unlikely if the defendant could have spent years using peer-to-peer file sharing software to download child pornography off other people's hard drive and be totally unaware that they could also take it off of his shared folder. Well, what would have made him aware? His constant use of the program. When you go on and use LimeWire or Aries or Shareza... I thought you said there was no way to know who or how often something was taken from your shared folders. You can't tell by looking at his computer. Let's say he's got 100 files in a folder. You can't tell whether a file in that folder had been downloaded by a person. All you can tell is that he uses the program and he has those files in the shared folder. You can't tell forensically by looking at the computer. Yes, 15 different people have downloaded off you. So how would he know that someone else took files from his computer? By using the software for years when he was doing the same thing to others. You browse on, you type in little boys, up comes the list of files. So you're saying the duration of the presence of the software on his computer is the proof that he was sufficiently computer literate to be aware of the capability of file sharing? Yes, that's part of it. The duration, the number of files, the fact he used two different computers. Other cases have mentioned the fact that he had a lot of files. He saved files on 12 different CDs. He did mention that he defragmented weekly. That was one of his admissions that goes towards his sophistication. But, Judge, I wouldn't argue that that's the major reason here. My review of the district court acknowledged that she couldn't do a five-level increase. She couldn't add that by reason of the fact that the Shariza and Eris programs were on the computer. So she said that Lynch was fairly computer savvy. And that included the fact that he had defragmented whatever that is, the computer, to make it run faster. And he had downloaded the program several years ago in 2007 and 2008. And that was the basis for essentially giving him a sentence that is 80 months longer than Judge Jarvie's analysis with more evidence of this kind in that case. And you tell me that you folks watch this sort of thing and argue, say, Judge, well, maybe you ought to take another look at it because this is going to be out of bounds with what else is going on. Do you do that or don't you do that? We do consider that carefully, Your Honor. We don't normally in front of Judge Reed say, well, Judge Bennett has decided this or Judge Jarvie has decided this. She's aware that different judges have different positions. But here the bottom line is that his extensive use, he had collected child pornography since 2000. His extensive use is part of the indirect evidence. And in other cases like Ulch and Stultz and Dolheide, we didn't have a defendant admitting to it. We didn't have the direct evidence, but we did have indirect evidence as we have here. In the event that the court found that the plus 5 did not apply, then the plus 2 would apply. And as counsel has alluded to, there is the harmless error as well. And I think certainly even though the judge did not repeat all of the arguments, all of the testimony offered and everything in the pre-sentence report, there was information in the pre-sentence report which we've outlined in our brief showing why the defendant did have the indirect knowledge. So based on those reasons, we would ask that the court affirm the sentence. Thank you. Okay, thank you. We have one more minute, Your Honor. Okay. Sentence of the day, last one. This caught me by surprise. I'm a nine when it comes to computer savvy. Take them apart, put them together. My wife is a computer software engineer at Rockwell. Not one speck of information is in this file, in writing or anything, about you can't tell if someone downloaded an image. That's an argument I just heard Mr. Trimble make. He may in fact know that. I don't know that, and I don't believe it, and it wasn't in the case. It's just as likely, taking his statement, that no one's ever downloaded a file from Mr. Lynch's computer except the law enforcement on those three dates mentioned by Mr. Trimble. The reason I don't believe that as a nine, if he's going to testify, I guess I will, is because every time a computer is accessed, it's registered somewhere. And so I just find that hard to believe. There wasn't any technical testimony like that in sentencing. There wasn't any reports about that. Well, it was distributed to the police officers, but that sets up a whole other argument. Yeah, I understand. I just wanted to make it clear. Okay. Yes, sir? You're under page 25 of the transcript. Page 25 of the transcript, okay. Well, thank you for your arguments. I appreciate, we all appreciate that you came over here to do this. These child pornography cases are difficult, always a difficult issue, but particularly now around the country, these sentences are getting questioned. He's right, Your Honor. Okay. That is on page 25. Stand corrected. I apologize, Mr. Trimble. Okay. Thank you very much. We'll take it under advisement. We'll be in recess until-